DENNIS P. TURLINGTON v. ROSA D. McLEOD

No. 8511SC450

(Filed 4 February 1986)

**Highways and Cartways § 12.3— cartway—no statutory use of land—other reasonable access to property**

> In an action to establish a cartway, evidence was sufficient to support the trial court's conclusion that petitioner was not legitimately putting his land to a use approved by N.C.G.S. 136-69 but was instead attempting to show a statutory use in order to establish a cartway to further his actual intended commercial use of the land as a recreation center and swimming club; furthermore, evidence was sufficient to support the trial court's conclusion that petitioner failed to establish that he did not have other reasonable means of access to his property.

APPEAL by petitioner from *Bowen, Judge.* Judgment entered 23 November 1984 in Superior Court, HARNETT County. Heard in the Court of Appeals 30 October 1985.

In approximately 1977, petitioner, Dennis Turlington, purchased a 21.29 acre tract of land which does not adjoin any public

road. Respondent, Rosa McLeod, owns a 15 acre tract which has frontage on Rural Paved Road 2009 and adjoins petitioner's land on the west and on the south. She resides upon her land. The distance from Rural Paved Road 2009 across respondent's land to petitioner's boundary is approximately 250 feet. Petitioner's land also adjoins property owned by Fred McLeod on the north and property owned by Lucille Cobb on the north and west. Fred McLeod's property has frontage on Rural Paved Road 2008. Lucille Cobb's property adjoins property owned by Grace Matthews, which also has frontage on Rural Paved Road 2008. The distance from petitioner's land to Rural Paved Road 2008 is approximately one-half mile.

In 1977 or 1978, petitioner sought and obtained permission from respondent's late husband, Harvey McLeod, to cross respondent's land in order to get from Rural Paved Road 2009 to his land in order to tend hogs which petitioner was raising. Thereafter, petitioner built a road over respondent's land, running from Rural Paved Road 2009 to his land. Although he ceased his hog operation in 1980, he continued to use the road for vehicular traffic until 30 June 1984, when respondent terminated petitioner's license to cross her land and closed the road. After petitioner destroyed the barricade, respondent obtained a temporary restraining order restraining petitioner from crossing her land.

Petitioner has also used a road leading from Rural Paved Road 2008 across the lands of Grace Matthews and Lucille Cobb to his land (Matthews-Cobb Road). Grace Matthews has also withdrawn permission for petitioner to cross her land in order to get to Lucille Cobb's land and thence to his own land. Her permission was withdrawn after petitioner began having parties and vehicular traffic across her land increased. At the time this action was tried petitioner had temporary permission to use the road which leads from Rural Paved Road 2008, crosses the lands owned by Fred McLeod and other property owners, and ends about 250 feet from petitioner's northern property line (Fred McLeod Road).

Petitioner instituted a cartway proceeding before the Clerk of Superior Court of Harnett County, seeking a cartway over the lands of respondent, pursuant to G.S. 136-68 and 136-69. The petition was granted by the Clerk and respondent appealed. The Su-

perior Court, trying this matter *de novo* without a jury, concluded that petitioner was not entitled to a cartway because (1) petitioner's use of his land did not meet the statutory requirements for the establishment of a cartway, (2) petitioner had other adequate means of ingress to and egress from his land, and (3) the establishment of a cartway for petitioner was not necessary, reasonable or just. From a judgment denying his petition for a cartway, petitioner appeals.

*Stewart and Hayes, P.A., by Gerald W. Hayes, Jr., for petitioner appellant.*

*Bryan, Jones, Johnson & Snow, by James M. Johnson, for respondent appellee.*

MARTIN, Judge.

G.S. 136-69 provides, in pertinent part:

> If any person . . . shall be engaged in the cultivation of any land or the cutting and removing of any standing timber, or the working of any quarries, mines, or minerals, or the operating of any industrial or manufacturing plants, or public or private cemetery, or taking action preparatory to the operation of any such enterprises, to which there is leading no public road or other adequate means of transportation affording necessary and proper means of ingress thereto and egress therefrom, such person . . . may institute a special proceeding . . . and if it shall be made to appear to the court necessary, reasonable and just that such person shall have a private way to a public road . . . over the lands of other persons, the court shall appoint a jury of view of three disinterested freeholders to view the premises and lay off a cartway . . . .

Thus, a landowner is entitled to condemn a cartway over the lands of another provided that he show (1) he is engaged in, or taking action preparatory to engaging in, an activity enumerated by the statute, (2) there is no public road or other adequate means of transportation allowing him reasonable access to his property, and (3) it is necessary, reasonable, and just that he have a private way. G.S. 136-69; *Taylor v. Paper Co.*, 262 N.C. 452, 137 S.E. 2d 833 (1964). In applying this test, the Court must strictly construe

Turlington v. McLeod

G.S. 136-68 and 136-69 which "are in derogation of the free and unrestricted use and enjoyment of realty by the owner of the land over which it is sought to establish a cartway." *Candler v. Sluder*, 259 N.C. 62, 65, 130 S.E. 2d 1, 4 (1963). Because of this rule requiring strict construction, the petition to establish a cartway should be denied if the petitioner fails in his burden of proving any one of the elements required by the statute.

With respect to the statutory requirement concerning land usage, the trial court made the following findings of fact:

17. Petitioner ceased his livestock operation in 1980, but continued to use the roadway he had built from R.P.R. #2009 across respondent's land to his land for vehicular traffic. In the spring of 1984, petitioner planted approximately two acres of beans on his tract of land, one of the purposes for which was to comply with the statutory requirements for a cartway.

18. From 1978 until about two weeks before the trial of this proceeding, petitioner, from time to time, cut fire wood and pulp wood from his land for his personal use and for sale and sold a small portion thereof as recently as two weeks before the trial of this proceeding began.

19. In the spring of 1984, petitioner began using his tract of land on weekends for commercial purposes in that he began having dances in a building located on his land and began playing loud music which could be clearly heard by respondent and other neighbors.

. . .

21. Petitioner has called his land "The Ponderosa" in the past and has used it as a commercial place for having parties where the public was invited by signs advertising the parties. Petitioner now calls his place "The Thornton Creek Recreational Center" and intends to form a swim club which will utilize the pond petitioner is digging or has dug on his land for swimming and recreational purposes.

The trial court concluded:

4. The Court is convinced from the totality of the evidence and by its greater weight that the petitioner seeks to

establish a cartway over respondent's land for the commercialization rather than the cultivation of petitioner's land. The Court recognizes that the operation of "The Ponderosa" or "The Thornton Creek Recreational Center" or the proposed swimming club does not defeat petitioner's right to a cartway, if there are other uses which meet the statutory test for the establishment of a cartway, but the Court concludes that the petitioner has failed to establish that he is using his land or intends to use his land for the purposes for which a cartway may be granted.

Although he excepts and assigns error to the trial court's conclusion of law, petitioner has not excepted to any of the court's findings of fact as to petitioner's use or proposed use of the land. The court's findings, therefore, are binding and our review is limited to the question of whether the facts found support the court's conclusion of law. *Moore v. Wilson*, 62 N.C. App. 746, 303 S.E. 2d 564 (1983).

In support of his argument that the trial court erred in concluding that the usage which petitioner was making, and proposed to make, of his land was not within that prescribed by the statute for establishment of a cartway, petitioner relies upon *Candler v. Sluder, supra.* In *Candler*, the plaintiffs owned land-locked property upon which there was a small apple orchard, producing apples which were either used by plaintiffs or given away to neighbors. In addition, a portion of the land was suitable for pasturing cattle, a use to which plaintiffs desired to put the land. The plaintiffs also desired to cut merchantable timber from the land. There was also a cabin on the property which plaintiffs occasionally leased to hunters. In upholding the establishment of a cartway, our Supreme Court held that even though hunting was not a use specified by the statute, there was sufficient evidence of uses which did comply with the statute to overcome nonsuit. The question of usage was properly one for the fact-finder.

In the present case, the trial court was obviously familiar with the rule of *Candler* that petitioner's commercial use of the land would not defeat his right to a cartway if he could also show a legitimate statutory use of the land. However, the trial court, sitting as fact-finder and weighing conflicting evidence, determined that petitioner was not legitimately putting his land to a

use approved by the statute, but was, instead, attempting to show a statutory use in order to establish a cartway to further his actual intended commercial use of the land as a recreation center and swimming club. The court's findings resolved the issue and support the court's conclusion. *Williams v. Pilot Life Ins. Co.*, 288 N.C. 338, 218 S.E. 2d 368 (1975).

Petitioner also excepts to the trial court's conclusion that petitioner has other adequate means of reasonable access to his property. The following facts, none of which are excepted to, were found by the court:

6. R.P.R. #2008 is a public road which is located about one-half mile north of petitioner's tract of land. There has been in existence for approximately sixty years a road leading in a southerly direction from R.P.R. #2008 and running across the lands of Grace Matthews and Lucille Cobb (hereinafter Matthews-Cobb Road) to the northern line of petitioner's land. The Matthews-Cobb Road is of sandy construction, is approximately 12 ft. in width with well-defined ruts and is suitable for vehicular traffic. There is an electric fence and a permanent barbed-wire fence located on the Matthews-Cobb Road between the petitioner's land and R.P.R. #2008.

7. There is another road leading in a southerly direction from R.P.R. #2008 across the lands of Fred McLeod and running by the homes of John T. Seymour, Ronnie G. Lee, Maylon Avery, Michael W. Johnson and to the land of Harry Matthews to a point in the Matthews line which is approximately 250 ft. southeast of petitioner's northeastern corner. This road is hereinafter referred to as the Fred McLeod Road. It does not join petitioner's land.

8. The Fred McLeod Road is of sand construction, is approximately 12 ft. in width, and is suitable for vehicular traffic, but does not touch petitioner's land.

9. The Fred McLeod Road has been in existence for over sixty years to a point about 250 ft. from petitioner's land.

. . .

11. In 1974, the timber on petitioner's land was cut by Ralph Matthews and access to the timber was had over the Matthews-Cobb Road from R.P.R. #2008.

12. In 1978 or early 1979, petitioner moved a mobile home across the Matthews-Cobb Road to petitioner's tract of land and petitioner now resides in this mobile home.

. . .

27. After July 3, 1984, petitioner built a road from his tract of land to the Fred McLeod Road at the Harry Matthews corner and petitioner is using the road built by him and the Fred McLeod Road to get to and from his property at the time this proceeding was tried.

28. Petitioner has temporary permission from Fred McLeod to use the Fred McLeod Road to gain access to petitioner's land, at least until this matter is settled.

29. Petitioner has permission of Grace Matthews to go over her land as far as it goes to get to and from his land, provided he will not use his land for commercial purposes.

A petition for a cartway will be denied if the petitioner has other reasonable access through a permissive right of way. *Taylor v. Askew*, 17 N.C. App. 620, 195 S.E. 2d 316 (1973). The permissive right of way is a reasonable access if it is "in all respects reasonable and adequate as a proper means of ingress and egress." *Garris v. Byrd*, 229 N.C. 343, 345, 49 S.E. 2d 625, 626 (1948). The question then is whether petitioner is presently entitled to a reasonable permissive right of way. *Pritchard v. Scott*, 254 N.C. 277, 118 S.E. 2d 890 (1961).

Applying the above rules to the facts found, we are of the opinion that the facts found support the judge's conclusion that petitioner has failed to establish that he does not have other reasonable means of access. Petitioner presently has permission to use the Fred McLeod Road which he has been using, along with the road he built over Harry Matthews' land, to get to his land. The fact that such permission may be temporary in nature, and may be withdrawn at some future time, is not relevant to our decision. Petitioner is not entitled to condemn a cartway if he presently has access to a public road. *Pritchard v. Scott, supra.*

We need not consider petitioner's assignment of error related to Finding of Fact No. 30, in which the trial court found that petitioner had "other adequate means of transportation affording necessary and proper means of ingress to and egress from" his property. Accepting as correct petitioner's contention that the finding is in reality a conclusion of law, we simply disregard the finding as unnecessary. *Ludwig v. Walter*, 75 N.C. App. 584, --- S.E. 2d --- (1985). Other facts found by the court, and recited herein, fully support the court's resolution of the issue of access and its judgment.

As we stated at the outset, petitioner was required to prove strict compliance with each of the requirements of G.S. 136-69 in order to be entitled to condemn a cartway across respondent's property. The trial court concluded that petitioner has failed to do so in two respects, i.e., usage and reasonable access, and its conclusions are supported by the facts which it found. Accordingly, we find no error in the trial court's further conclusion that petitioner failed to show that the establishment of a cartway was necessary, reasonable, or just. The judgment denying the petition is

Affirmed.

Chief Judge HEDRICK and Judge EAGLES concur.