DENNIS P. TURLINGTON v. ROSA D. McLEOD, GRACE MATTHEWS, FRED McLEOD, LOUISE McLEOD, JOHN SEYMOUR, KAREN SEYMOUR, RON-NIE LEE, JUNE ELLEN LEE, MAYLON AVERY, FLOSSIE AVERY, MIKE JOHNSON, KATHY JOHNSON, HARRY MATTHEWS, DEBBIE MAT-THEWS, MACKIE WHITE, BETTY BYRD WHITE, CRAIG MATTHEWS AND DENISE CURRIN MATTHEWS

No. 8711SC175

(Filed 5 April 1988)

1. **Highways and Cartways § 12.1— cartway—evidence of lack of access—sufficient**

     Petitioner's evidence in a cartway proceeding was sufficient to show lack of access where petitioner's evidence tended to show that petitioner now had no permission from any adjoining landowner to go over his or her land to get to a public road; that the various permissions given to him earlier were all withdrawn; and that one respondent had even barricaded with barbed wire a way petitioner formerly used. N.C.G.S. § 136-69.

2. **Highways and Cartways § 12.1— cartway proceeding—purpose for which land used—not sufficient**

     Petitioner's evidence in a cartway proceeding was not sufficient to establish that he was using his land for a purpose which would qualify him for a cartway where the only possible qualifying use was sawing trees into firewood and selling it. Trees suitable only for firewood are not "standing timber" within the meaning of N.C.G.S. § 136-69.

APPEAL by respondent Rosa D. McLeod from *Stephens, Judge.* Judgment entered 17 October 1986 in Superior Court, HARNETT County. Heard in the Court of Appeals 23 September 1987.

*Stewart and Hayes, by Gerald W. Hayes, Jr. and Vernon K. Stewart, for petitioner appellee.*

*Bryan, Jones, Johnson & Snow, by James M. Johnson, for respondent appellant.*

PHILLIPS, Judge.

Petitioner, who owns a 21-acre tract of Harnett County land that is surrounded by lands belonging to the various respondents, brought this special proceeding to obtain a cartway from his land to a public road. An earlier proceeding for the same purpose, tried to the judge and affirmed by this Court, *Turlington v. McLeod*, 79 N.C. App. 299, 339 S.E. 2d 44, *disc. rev. denied*, 316 N.C. 557, 344 S.E. 2d 18 (1986), ended in an adjudication that plaintiff was not then entitled to a cartway under the provisions of G.S. 136-69 because (1) he was not using or preparing to use the land to accomplish any purpose stated in the statute, and (2) he had permission from some adjoining owners to cross their land and thus did not need a cartway. In the trial of this proceeding, however, the jury found that petitioner is entitled to a private way over the lands of one or more of the respondents and judgment was entered on the verdict.

[1] Rosa D. McLeod, the only respondent to perfect an appeal, first contends that contrary to the verdict petitioner is not entitled to a cartway under the provisions of G.S. 136-69 because the evidence does not show, as that statute requires, that petitioner's land is without adequate access to a public road. This contention has no merit and we overrule it. Contrary to appellant's argument, most of which is devoted to times covered by the earlier proceeding, petitioner's evidence at this trial clearly supports the allegation that his land is *now* without adequate access to a public road. When viewed in its most favorable light for the petitioner his evidence tends to show that petitioner now has no permission from any adjoining landowner to go over his or her land to get to a public road; that the various permissions given to him earlier were all withdrawn; and that one respondent had even barricaded with barbed wire a way that he formerly used.

[2] But respondent's other contention, that the evidence presented at trial was insufficient to establish that petitioner is using his land for a purpose that entitles him to a cartway, is well taken. The evidence on this point is without significant conflict, and tends to show that the only use petitioner is making of his land that could possibly qualify him to obtain a statutory cartway is sawing trees up into firewood and selling it. This raises a question of law that apparently has not been ruled upon by our Courts

heretofore. For an owner of landlocked land, who has no adequate access to a public road, is qualified to petition for a cartway under G.S. 136-69 only if he is engaged or is preparing to engage—

> in the cultivation of any land or the cutting and removing of *any* standing timber, or the working of any quarries, mines, or minerals, or the operating of any industrial or manufacturing plants, or public or private cemetery, . . . (Emphasis supplied).

The statute says nothing about cutting trees up into firewood and sifted down, petitioner's evidence is to the following effect: Though there are some standing trees on the 21-acre tract of land, all the marketable timber was removed from the land some years earlier; the trees now there—oak and hickory trees, some of "pretty good size"—are suitable only for firewood; and petitioner cuts the trees, saws them up, and sells firewood "as people need it." No evidence was presented that he has used the trees, or intends to use them, for any purpose other than firewood, and petitioner does not argue otherwise.

Construing the statute strictly, as we must, since it infringes upon the common law rights of adjoining property owners, *Candler v. Sluder*, 259 N.C. 62, 130 S.E. 2d 1 (1963), we are of the opinion that trees suitable only for firewood are not "standing timber" within the meaning of the statute, and the judgment in petitioner's favor is vacated. The following comment from 54 C.J.S. *Logs and Logging* Sec. 1(b) at 672 (1948) is pertinent:

> The word "timber" has an enlarged or restricted sense, according to the connection in which it is employed. It has been held that "timber" may refer to standing trees suitable for the manufacture of lumber to be used for building and allied purposes, but it has also been held that timber is distinguishable from trees in that the former term applies only to the wood, or the particular form which the tree assumes when no longer growing or standing in the ground. The term "timber" has also been applied to the stems or trunks of trees cut and shaped for use in the erection of buildings or other structures and not manufactured into lumber within the ordinary meaning of the word "lumber," or to that sort of wood which is proper for buildings, or for tools, utensils, furniture, carriages, fences, ships, and the like.

Black's Law Dictionary 1653 (rev. 4th ed. 1968) defines the word timber as:

> Wood felled for building or other such like use. In a legal sense it generally means (in England) oak, ash, and elm, but in some parts of England, and generally in America, it is used in a wider sense, which is recognized by the law.
>
> The term "timber," as used in commerce, refers generally only to large sticks of wood, squared or capable of being squared for building houses or vessels; and certain trees only having been formerly used for such purposes, namely, the oak, the ash, and the elm, they alone were recognized as timber trees. But the numerous uses to which wood has come to be applied, and the general employment of all kinds of trees for some valuable purpose, has wrought a change in the general acceptation of terms in connection therewith, and we find that Webster defines "timber" to be "that sort of wood which is proper for buildings or for tools, utensils, furniture, carriages, fences, ships, and the like." This would include all sorts of wood from which any useful articles may be made, or which may be used to advantage in any class of manufacture or construction. (Citations omitted.)

And in *People v. Bolling*, 140 Mich. App. 606, 612-13, 364 N.W. 2d 759, 763 (1985), the Michigan Court of Appeals said "[i]n a contract for the purchase of timber, the purchaser acquires no title to trees not suitable for any purpose but for firewood."

Our holding therefore is that the "cutting and removing of any standing timber" as used in G.S. 136-69 means cutting and removing standing trees that are suitable for constructing buildings or other objects out of; it does not mean cutting and removing trees that are suitable only for firewood.

Vacated.

Judges COZORT and GREENE concur.